**In re BELL OLDSMOBILE, INC., Bankrupt.**

**Joseph SZABO, Trustee in Bankruptcy of Bell Oldsmobile, Inc., Appellant,**

v.

**VINTON MOTORS, INC., Appellee.**

**No. 78–2668–S.**

United States District Court,
D. Massachusetts.

Jan. 15, 1980.

Gary W. Cruickshank, Riemer & Braunstein, Boston, Mass., for appellant.

George Rosenberg, Boston, Mass., Alfred L. Morin, Needham, Mass., Henry Friedman, Robert F. White, Sherburne, Powers & Needham, Boston, Mass., for appellee.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

The trustee in bankruptcy appeals a decision of the bankruptcy judge awarding the proceeds of the sale of an automobile to appellees.

On February 15, 1977, Vinton Motors, Inc. (Vinton), a Vermont corporation, agreed to purchase an automobile from Bell Oldsmobile, Inc. (Bell), a Massachusetts corporation, which, in turn, agreed to purchase a 1977 Oldsmobile Regency from Vinton. Payment was to be made by check and tendered simultaneously with the delivery of each automobile. The transaction was completed on Friday, February 18, 1977, and Vinton received a check from Bell in the amount of $7,590.37 drawn on the Capital Bank & Trust Company (Capital); Vinton deposited this in its own account on Tuesday, February 22, 1977. On February 23, 1977, Bell entered into an assignment for the benefit of creditors, with Robert White named assignee. Within one day following his acceptance of the assignment from Bell, Robert White transferred all of Bell's funds in the Capital account to an account in his name as assignee. On March 1, 1977, Vinton received written notification from its bank that Bell's check had been dishonored as a result of the assignment. On April 1, 1977, Bell was adjudicated a bankrupt; Vinton and the trustee agreed that the automobile could be sold with the proceeds to be held in escrow pending the resolution of Vinton's claim to the property. The car was sold for $7,328.53, which was the amount awarded to Vinton by the bankruptcy judge.

Appellant seeks reversal of the bankruptcy judge's decision on the grounds that he erroneously applied M.G.L.A. c. 106, § 2–507(2). The trustee argues that, assuming the transaction with Vinton was a cash sale, the seller had ten days from the date of delivery to Bell to claim the automobile. Having failed to make this demand, Vinton stands merely as a general creditor and is therefore not entitled to the proceeds from the sale.

Appellant is correct in his assertion that M.G.L.A. c. 106, § 2–507(2), as illuminated by Comment 3 thereto, requires a cash seller to make a demand for the return of the goods sold within ten days. *See In re Samuels & Co., Inc.,* 526 F.2d 1238 (5th Cir. 1976); *In re Helms Veneer Corporation,* 287 F.Supp. 840 (W.D.Va.1968); *In re Mort Co.,* 208 F.Supp. 309 (E.D.Pa.1962).

To require a seller to demand its goods within ten days of delivery to the buyer, however, absent notice of dishonor of the buyer's check, would produce the anomalous result that a seller might lose its right to reclaim before it had any reason to believe reclamation for nonpayment was necessary. The ten day requirement should run from the time the seller has notice that the buyer will not make payment. Under § 2–511(3), payment is defeated upon dishonor of a party's check. I rule that the seller in a cash sale has ten days within which to reclaim the goods sold after notice of dishonor of the buyer's check. To the extent that the above cited cases hold differently, I decline to follow them.

Formal notice of dishonor of Bell's check was received by Vinton on March 1, 1977; Vinton therefore had until March 10, 1977 to demand the return of its automobile.[1] The bankruptcy judge found that plaintiff's attorney made such a demand within the required time period. *In re Bell Oldsmobile, Inc.*, No. 78–2668–JG, at 10. Vinton preserved its rights to the car under § 2–507(2) and the bankruptcy judge's award of the proceeds of its subsequent sale was proper.

Accordingly, the order of the bankruptcy judge is AFFIRMED.

---

[1]. The bankruptcy judge found that Vinton had prior information that the check would be dishonored. It seems to me that the simplest rule, with the greatest element of certainty and the least likelihood of dependence of oral evidence, is to fix upon formal notice on dishonor as the starting point.